UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 18-266 (SRN/BRT)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S POSITION** |
| v. | ) | **REGARDING SENTENCING** |
| | ) | |
| KERRY DALE KISSLINGER, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Joseph H. Thompson, Assistant United States Attorney, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 33 months in prison, which is the low-end of the Guidelines range.

## I.    BACKGROUND

Kerry Dale Kisslinger was the CEO and owner of ES Windpower, Inc., a company that sold and installed wind turbine systems to farmers in Minnesota and throughout the Midwest. Kisslinger marketed the wind turbines as a way for customers to save money by reducing or even eliminating their energy expenses. Kisslinger solicited and received payments from his customers for the wind turbines. Kisslinger falsely represented to his customers that in exchange for their payments, Kisslinger and his company would obtain and install a wind turbine on the customers' farms or land.

Kisslinger sold wind turbines to several dozen customers. But Kisslinger did not deliver or install the turbines for nearly half of his customers. He instead pocketed some or all of their down payments and used it for his own personal use and benefit. Kisslinger used ES Windpower as something of a personal piggy bank. Bank records show Kisslinger transferred more than $600,000 from the company account to his personal bank account between April 2011 and May 2015. Kisslinger also used the company account to make all manner of personal expenditures—from restaurants and clothing to Minnesota Timberwolves season tickets. Kisslinger further used the company bank account to pay his personal credit card bills and to make a $45,000 down payment on his lakefront home in Emmons, Minnesota.

Kisslinger's misuse of his customers' money left ES Windpower unable to meet its obligations to its customers and unable to refund its customers' money, even though many customers never received the wind turbine they had purchased.

Kisslinger continued to loot his company right up until it went out of business. On March 27, 2015, Kisslinger informed Dakota Turbines that he was going out of business effective immediately and that he would be filing bankruptcy. He filed for bankruptcy about six weeks later, on May 14, 2015. In the year or so prior to his bankruptcy petition—from April 2014 to April 2015—Kisslinger transferred more than $175,000 from the ES Windpower bank account to his own personal accounts. These transfers include notations indicating that they were for personal expenses, including "move money to pay personal bill," "pay personal kisslinger bills," "owners draw cover bills," and "cover bills to personal owners."

2

Several of these transfers occurred right around the time ES Windpower closed on March 27, 2015. For example, Kisslinger cashed a $70,000 check from one of his customers, C.R., on March 20—just seven days before the company closed. Kisslinger also transferred $1,0000 to his personal account on March 23, $8,500 on March 26, and $9,500 on April 6, 2015. And Kisslinger continued to spend money from the company account after it closed on March 27.

In all, Kisslinger fraudulently solicited and received approximately $1,047,500 in payments from customers for whom he did not deliver and install a complete and operational wind turbine system.

On November 7, 2018, Kisslinger was charged with five counts of wire fraud, in violation of 18 U.S.C. § 1343. He pled guilty to Count One on September 17, 2019, pursuant to a written plea agreement.

## II.    THE PRESENTENCE INVESTIGATION REPORT

The November 2018 edition of the U.S. Sentencing Guidelines Manual applies in this case. The government agrees with the PSR's Guidelines calculation.

The base offense level for Count One is 7 pursuant to Guidelines § 2B1.1(a)(1). PSR ¶27. The base offense level is increased 14 levels pursuant to Guidelines § 2B1.1(1)(H) because the total loss amount was more than $550,000 but less than $1.5 million. PSR ¶28. The offense level is increased 2 levels pursuant to Guidelines § 2B1.1(b)(2)(A) because the offense involved 10 or more victims or resulted in substantial hardship to one of the victims. PSR ¶28. The greater of the adjusted offense levels is 23. PSR ¶32. With a three-level reduction for timely acceptance of responsibility, defendant's total offense level is 20. PSR ¶37.

Defendant has 0 criminal history points and falls in criminal history category I. PSR ¶42.

An offense level of 20 and criminal history level I results in an advisory Guidelines range of 33 to 41 months in prison. PSR ¶71.

## III.   GOVERNMENT'S SENTENCING RECOMMENDATION

Based on a review of the § 3553(a) factors, the government recommends that the Court impose a sentence of 33 months in prison, which is the low end of the Guidelines range.

Kisslinger solicited and received down payments from his customers despite knowing he would not be able to deliver the promised wind turbines. He did this to enrich himself. And he did so by abusing the trust placed in him by his victims.

A particular aggravating factor is that Kisslinger kept soliciting, receiving, and misappropriating money from his victims even when it became clear his company was going bankrupt. Indeed, he even cashed a $70,000 check from one of his customers a week before the company closed.

Kisslinger stole more than $1 million from his victims. And his crime had a significant impact on his victims. Victim SL, for example, explained that Kisslinger's fraud "added additional stress and distractions to my place of business and carried over into the home environment. It impacted thoughts, actions, and even our trust in people." PSR ¶17. Similarly, Victim RC explained that "Farming has been hard enough and this had been much added stress to me trying to make ends meet." PSR ¶22.

A sentence at the low-end of the Guidelines range will promote respect for the law by emphasizing to others that theft and fraud will not be tolerated. By imposing a sentence within the Guidelines, the Court will emphasize that financial crimes will be punished severely, even where the participants are middle class professionals and not street criminals. A guidelines sentence may help to deter others from taking advantage of their professional position to carry out fraudulent activities.

## IV.    CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 33 months in prison.

Respectfully Submitted,

Dated:  January 10, 2020                       ERICA H. MacDONALD
                                               United States Attorney

                                                /s/ *Joseph H. Thompson*
                                           BY:  JOSEPH H. THOMPSON
                                               Assistant U.S. Attorney